**FAMINE RELIEF FUND, Plaintiff-Appellant,**

v.

**STATE OF WEST VIRGINIA; Ken Hechler, an individual, in his official capacity as Secretary of State of the State of West Virginia, Defendants-Appellees.**

**No. 89–2167.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1990.

Decided June 8, 1990.

Rehearing and Rehearing In Banc Denied Aug. 13, 1990.

Charles Richard McElwee, Robinson & McElwee, Charleston, W.Va., for plaintiff-appellant.

Robert J. Lamont, Sr. Deputy Atty. Gen., Charleston, W.Va., for defendants-appellees.

William C. Porth, Jr., Robinson & McElwee, Charleston, W.Va., Steven Drexell Simpson, Elizabeth D. Scott, Sharon L. Hartman, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, N.C., on brief, for plaintiff-appellant.

Roger W. Tompkins, Atty. Gen., David P. Cleek, Charleston, W.Va., on brief, for defendants-appellees.

Before ERVIN, Chief Judge, and PHILLIPS and CHAPMAN, Circuit Judges.

ERVIN, Chief Judge:

In this appeal, appellant Famine Relief Fund ("the Fund") challenges the constitutionality of the West Virginia Solicitation of Charitable Funds Act ("the Act" or "the Solicitation Act"). The case arose from the refusal of the Secretary of State of West Virginia ("the Secretary") to renew the Fund's license to solicit charitable funds. The Fund's amended complaint, filed in the United States District Court, Southern District of West Virginia, alleged that the Act, both on its face and as applied, violates its right of free speech under the first amendment and its rights of due process and equal protection under the fourteenth amendment of the United States Constitution.

The district court granted summary judgment against the Fund, and we now reverse that decision. Although the substantive provisions of the Act do not facially violate the charity's first amendment rights, we find, for the reasons discussed below, that the Act's enforcement proce-

dures do not afford the Fund sufficient due process before this prior restraint on its speech.

## I.

The Articles of Incorporation of the Famine Relief Fund state that its purpose is to alleviate poverty and hunger in "Third World" countries, "particularly Africa." However, during 1986 and 1987, all of the Fund's public solicitations mentioned only Native Americans, specifically the Rosebud Sioux tribe. In 1986, six percent of the Fund's charitable grants and allocations went to the Rosebud Sioux; that percentage dropped to two percent in 1987.

In September 1987, the Fund filed a registration statement with the Office of the Secretary of State to renew its license to solicit funds. After an investigation, the Secretary advised the Fund that the renewal of its registration would be denied. Citing W.Va.Code § 29–19–8(a) and (c), he informed the Fund:

> It appears that a clear description of programs is available, however, expenditures from funds collected are not related in a primary degree to stated purpose. When in-kind contributions are eliminated, nearly all of the cash contributions go to fund-raising and not to programs for the Sioux Indians.
>
> The structure of the Board of Directors is unacceptable, not because of number, but because all board members have a direct pecuniary benefit from the charity.[1]

On November 11, 1987, the Fund moved for a temporary restraining order and alternatively for a preliminary injunction enjoining the State of West Virginia ("the State") from enforcing the Act and from conducting an administrative hearing to re-view the denial of the Fund's license. The Fund's request for a temporary restraining order was denied, and the administrative hearing was held on November 19, 1987. On February 25, 1988, the Commission on Charitable Organizations ("the Commission") affirmed the Secretary's denial of the solicitation license.

After various procedural delays, the Fund moved for summary judgment enjoining enforcement of the Act and declaring certain provisions of the Act unconstitutional. The district court denied the Fund's motion but granted the State's motion for summary judgment.

The Fund filed a timely notice of appeal of this decision.

## II.

The purpose of the West Virginia Solicitation of Charitable Funds Act is

> to protect the people of the state of West Virginia by requiring full public disclosure by persons and organizations who solicit funds from the public and the purposes for which such funds are solicited and how they are actually used, and to prevent deceptive and dishonest statements and conduct in the solicitation and reporting of funds for or in the name of charity.

W.Va.Code § 29–19–1a (1986 & Supp.1989). To monitor the activities of charitable organizations, the Act requires all those subject to its provisions to file a registration statement annually.[2] W.Va.Code § 29–19–5. This statement must contain information such as the organization's name, address, principal officers, balance sheet, income statement, and the purposes for which contributions are to be used.

Organizations applying for registration are to be reviewed according to three "ob-

---

**1.** The Secretary, in its investigation, and the Commission on Charitable Organizations, on appeal, found that there were conflicts of interest on the Fund's Board because: (1) the Fund contracted with a corporation while a member of the Fund's Board was an employee of that corporation; (2) the Fund contracted with another corporation owned by the daughter of the Fund's two officers; and (3) the Fund's two officers were also paid employees of the Fund.

**2.** Organizations that (1) "solicit only within the membership of the organization by the members thereof," W.Va.Code § 29–19–6(a)(4), and designated types of organizations that (2) do not employ a professional solicitor or fund-raising counsel or do not receive in excess of $10,000 during a calendar year, W.Va.Code § 29–19–6(b), are exempt from registration.

jective standards," including, but not limited to, the following:

    (a) Charitable organizations shall include in each solicitation a clear description of programs for which funds are requested and source from which written information is available. Expenditures shall be related in a primary degree to [the] stated purpose (programs and activities) described in solicitations and in accordance with reasonable donor expectations.

    (b) Charitable organizations shall establish and exercise controls over fundraising activities conducted for the organizations' benefit, including written contracts and agreements and assurance of fund-raising activities without excessive pressure.

    (c) Charitable organizations shall substantiate a valid governing structure and members shall comply with the provisions for conflict of interest as defined in section twenty-five, article one chapter thirty-one of this code.

W.Va.Code § 29–19–8.

The Act provides for administrative review of the Secretary's decision. A charity which is denied registration may request a hearing before the Commission, at which testimony may be taken. W.Va.Code § 29–19–9(d). Such hearing and judicial review are to be conducted in accordance with the West Virginia Administrative Procedures Act. W.Va.Code § 29–19–15(d).

### III.

The Fund contends that the Act violates the first amendment on its face and as applied because it limits the percentage of its expenditures that can be used for fundraising.

■ It is well-settled law that solicitation by charitable organizations is speech protected by the first and fourteenth amendments to the United States Constitution. *See Riley v. National Federation of the Blind of North Carolina,* 487 U.S. 781, 788, 108 S.Ct. 2667, 2673, 101 L.Ed.2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 959–

60, 104 S.Ct. 2839, 2848–49, 81 L.Ed.2d 786 (1984); *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 632–33, 100 S.Ct. 826, 833–34, 63 L.Ed.2d 73 (1980). Charitable solicitations can inform the public about the charity's existence and goals, disseminate and propagate its views and ideas, and advocate its causes. *Schaumburg,* 444 U.S. at 632, 100 S.Ct. at 833; *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1230 (4th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1923, 109 L.Ed.2d 286 (1990). In the three cases it has heard in this area, *Riley, Munson,* and *Schaumburg,* the Supreme Court has struck down specific state regulations of charitable solicitation as being too restrictive to pass constitutional muster.

In *Schaumburg,* the first in this trilogy of cases, the Supreme Court invalidated a municipal ordinance prohibiting the solicitation of contributions by charitable organizations that do not use at least seventy-five percent of the receipts for "charitable purposes." The ordinance's definition of charitable purposes excluded solicitation expenses, salaries, overhead, and other administrative expenses. The Court concluded:

> [T]he 75–percent limitation is a direct and substantial limitation on protected activity that cannot be sustained unless it serves a sufficiently strong subordinating interest that the Village is entitled to protect.... [T]he Village's proffered justifications [protecting the public from fraud, crime, and undue annoyance] are inadequate and ... the ordinance cannot survive scrutiny under the First Amendment.

*Schaumburg,* 444 U.S. at 636, 100 S.Ct. at 836. The Court emphasized that there was no evidence that organizations that spent less than 75% of their receipts on charitable purposes were any more fraudulent, criminal, or annoying than those that spent more.

In *Munson,* the challenged regulation included a percentage restriction similar to the one found in *Schaumburg,* limiting fundraising expenses to twenty-five per-

cent of total gross income. The regulation, however, also provided for the possibility of a waiver of the restriction "in those instances where the 25% limitation would effectively prevent the charitable organization from raising contributions." Again, the Court held the regulation to be unconstitutional:

> The flaw in the statute is not simply that it includes within its sweep some impermissible applications, but that in all its applications it operates on a fundamentally mistaken premise that high solicitation costs are an accurate measure of fraud.... It is equally likely that the statute will restrict First Amendment activity that results in high costs but is itself a part of the charity's goal or that is simply attributable to the fact that the charity's cause proves to be unpopular. On the other hand, if an organization indulges in fraud, there is nothing in the percentage limitation that prevents it from misdirecting funds. In either event, the percentage limitation, though restricting solicitation costs, will have done nothing to prevent fraud.

*Munson*, 467 U.S. at 966–67, 104 S.Ct. at 2852.

In *Riley*, the most recent case on this issue, the Court struck down regulations that defined the *prima facie* "reasonable fee" that a professional fundraiser may charge as a percentage of the gross revenues solicited and that required professional fundraisers to disclose to potential donors the gross percentage of revenues retained in prior charitable solicitations. Relying on *Schaumburg* and *Munson*, the Court held: "Our prior cases teach that the solicitation of charitable contributions is protected speech and that using percentages to decide the legality of the fundraiser's fee is not narrowly tailored to the State's interest in preventing fraud." 487 U.S. at 789, 108 S.Ct. at 2673.

■ In all of these cases, the Supreme Court has acknowledged the legitimate state interest in regulating this type of speech to prevent fraud and misrepresentation. *See Riley*, 487 U.S. at 792, 108 S.Ct. at 2675; *Schaumburg*, 444 U.S. at 636–37,

100 S.Ct. at 835–36. This regulation, however, must be narrowly tailored to further that interest without unnecessarily intruding upon the charities' right of free speech. *Riley*, 487 U.S. at 792, 108 S.Ct. at 2675; *Telco*, 885 F.2d at 1230. The question in this case is whether the Solicitation Act is sufficiently tailored to satisfy the constitutional requirements protecting free speech, due process, and equal protection under the law.

■ The Act differs from the statutes in the Supreme Court cases discussed above in that it neither requires nor prohibits the spending of any percentage of revenue or expenditures in any particular manner. The Act does require that expenditures "be related in a primary degree to [the] stated purpose (programs and activities) described in solicitations," but it does not restrict the percentage spent for fundraising and administration.

The Act does mention "percentages" of total expenditures in two sections. First, charitable organizations are required to disclose "upon request of the person solicited, the estimated percentage of the money collected which will be applied to the cost of solicitation and administration or how much of the money will be applied directly for the charitable purpose...." W.Va.Code § 29–19–8. Second, section 29–19–7 requires the filing of written contracts between professional fundraising counsel and the organization. If there is no written contract, the section requires the filing of a written statement in lieu of such contract. This statement must "provide the amount, percentage, or other method of compensation to be received by the professional solicitor or professional fund-raising counsel...." Each of these provisions will be discussed below.

In *Riley v. National Federation of the Blind of North Carolina, Inc.*, as noted above, the Supreme Court invalidated a North Carolina regulation requiring professional fundraisers to disclose to potential donors, before an appeal for funds, the percentage of charitable contributions collected during the previous twelve months that were actually given to charity. The

Court reasoned that such a requirement constituted "compelled speech" in violation of the first amendment.[3] 487 U.S. at 795–800, 108 S.Ct. at 2676–79. Another part of the North Carolina regulations, very similar to section 29–19–8 of the West Virginia Code, required the fundraiser to disclose this percentage information upon request. This provision was not challenged by the plaintiffs in *Riley* and thus was not before the Court. The Court, nevertheless, noted, "[O]f course, a donor is free to inquire how much of the contribution will be turned over to the charity.... [I]f the solicitor refuses to give the requested information, the potential donor may (and probably would) refuse to donate." *Id.* at 799, 108 S.Ct. at 2679. We wholeheartedly agree with this observation and therefore find neither any infringement nor compulsion of one's speech in this language of W.Va.Code § 29–19–8.

■ A state's regulations can require a charity to disclose its financial statements.[4] This disclosure fosters the substantial state interests in informing the public and preventing fraud without being unduly burdensome. Financial statements document an organization's activities and are necessary for regulators and interested donors to monitor any potential mismanagement or fraud.[5] Furthermore, any responsible organization will maintain financial records for its own internal controls. The requirement in section 29–19–7 that charities file solicitation contracts or statements summarizing the terms of such contracts provides only greater detail and description to information already disclosed on the expense side of the charity's income statement. Therefore, this requirement does

not violate the Fund's first amendment rights.[6]

■ In addition to these disclosure requirements, the three criteria in section 29–19–8 also serve the State's interest in preventing fraud and misrepresentation. A state can require charities soliciting funds within its borders to accurately describe their mission and how the donations will be used. It can also require oversight of fundraising activities and prohibit undisclosed conflicts of interest that might affect the operations of the charity. Any charity "exercising ordinary common sense can sufficiently understand and comply with" these provisions. *United States Civil Service Comm'n v. Nat'l Assoc. of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973) (describing standard for unconstitutional vagueness). Further, one can understand the necessity for these requirements to "prevent deceptive and dishonest statements and conduct in the solicitation and reporting of funds for or in the name of charity." W.Va.Code 29–19–5. Therefore, we do not find the substantive requirements of the Act to be facially unconstitutional.

However, in addition to its arguments that the Act's requirements are unconstitutional on their face, the Fund also claims that the Secretary's office applied the Act unconstitutionally by actually using a percentage limitation in rejecting the Fund's registration statement. In contrast, the State asserts that it examined the percentage of expenditures used for fundraising purposes only as one signal that further inquiry into possible fraudulent conduct might be necessary. Because we find that

3. The Court, however, held that a requirement that a fundraiser disclose his employer's name and address and his professional status would withstand first amendment scrutiny. 487 U.S. at 799 n. 11, 108 S.Ct. at 2679 n. 11.

4. In *Telco Communications, Inc. v. Carbaugh,* this court affirmed a Virginia statute requiring professional solicitors to disclose in writing that financial statements for the last fiscal year were available from the Virginia Office of Consumer Affairs. 885 F.2d at 1231. The West Virginia Act contains a similar requirement at W.Va. Code § 29–19–8(e).

5. This same need for financial statements by regulators and investors underlies disclosure requirements for publicly held corporations. *See, e.g.,* 17 C.F.R. §§ 240.13a–1, 240.14a–3, 240.15d–1.

6. As further explained in this opinion, the percentage calculations in these statements cannot be used to deny the renewal of a charity's license to solicit, and, therefore, the relevance of this level of detail is unclear. We do not, however, find that this requirement violates the first amendment.

the Solicitation Act is facially unconstitutional for due process reasons, we need not resolve this factual dispute in this case. We do note, however, that even if the Act was constitutional, any denial of a charity's registration based, even in part, upon the charity's percentage of expenditures for administrative or fundraising expenses would violate the first amendment as construed in *Schaumburg, Munson,* and *Riley.*

## IV.

The Fund also contends that the Act violates the fourteenth amendment because it contains inadequate procedural protections for those denied a license to solicit charitable funds. If the Secretary denies a charity's registration statement, the charity cannot solicit funds in the state unless that denial is reversed. W.Va.Code § 29–19–13(a). Within fifteen days of the denial, the charity can request a hearing before the Commission, which must be held within fifteen days from the date of the request. W.Va.Code § 29–19–9(d). If the Commission upholds the Secretary's decision, the charity may seek judicial review of the Commission's decision pursuant to the West Virginia Administrative Procedures Act, W.Va.Code § 29A–5–4.[7] During the time a charity is awaiting a judicial determination of the correctness of the administrative denial of the registration, the charity does not have a license to solicit funds and thus cannot solicit in West Virginia.

We find that these procedures constitute a prior restraint on a charity's speech. The State argues that these regulations apply only after a violation by the charity and therefore are not a prior restraint. The Supreme Court, however, has rejected this distinction, stating that "whether the [charitable solicitation licensing requirement] regulates before- or after-the-fact makes little difference," because "the chill on the protected activity is the same." *Munson,* 467 U.S. at 969, 104 S.Ct. at 2853. Else-

where in the *Munson* opinion, the Court explained:

> Our cases make clear that a statute that requires ... a "license" for the dissemination of ideas is inherently suspect. By placing discretion in the hands of an official to grant or deny a license, such a statute creates a threat of censorship that by its very existence chills free speech.

*Id.* at 964 n. 12, 104 S.Ct. at 2851 n. 12; *see also Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) ("Any system of prior restraints of expression comes to the Court bearing a heavy burden against its Constitutional validity.").

■ The Supreme Court has enunciated three due process protections required for any prior restraint on speech. *See Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (invalidating requirement of state license prior to public screening of films). First, the state must initiate judicial action to restrict a person's first amendment right, and the state must have the burden of proof in the action. Second, any regulatory act must provide assurance that the free exercise of protected speech will not be delayed while the state seeks judicial review. Third, judicial review must be prompt.

In the present case, the State can, and did, prohibit the Fund's solicitation activities without first bringing any judicial action. Under the Solicitation Act, it is the charity that must seek an administrative hearing and judicial review after its registration is denied. In addition, the Act does not specify who bears the burden of proof in these proceedings. Moreover, the Fund remains unable to solicit funds while judicial review is pending. Consequently, the Act, on its face, does not satisfy the requirements of *Freedman* and thus violates the Fund's fourteenth amendment right of due process.

In light of the above discussion, we find no reason to reach the Fund's final conten-

---

7. Judicial review of the Commission's decision is limited to a review of the record developed before the commission. W.Va.Code § 29A–5–4(f).

tion that the Act violates its fourteenth amendment right to equal protection.

## V.

In summary, we find that, although the Act on its face does not violate the Fund's first amendment right of free speech, its procedures do not afford the Fund due process as guaranteed by the fourteenth amendment. Accordingly, we reverse the decision of the district court and hereby direct the district court to enjoin enforcement of the Act.

SO ORDERED.