UNITED CANCER COUNCIL, INC., PETITIONER
*v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 2008–91X.          Filed March 11, 1993.

---

*Leonard J. Henzke, Jr., James W. Curtis, Jr., MacKenzie Canter III,* and *Theodore R. Weckel, Jr.,* for petitioner.

*Dianne I. Crosby, Ronald D. Pinsky, Dierdre A. Whittaker, Chalmers W. Poston, Jr., Sandra M. Jefferson, Joan R. Domike,* and *Dean R. Morley IV,* for respondent.

OPINION

CHABOT, *Judge:* This matter is before us on petitioner's motion for summary judgment pursuant to Rule 121.[1]

Petitioner initiated this action pursuant to section 7428[2] for a declaratory judgment that it qualifies as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) and that it qualifies as an organization described in section 170(c)(2). The action was initiated after respondent revoked a favorable ruling letter which had been issued to petitioner. The revocation issued November 2, 1990, is retroactive to June 11, 1984. The issue for decision is whether respondent's revocation of the favorable ruling letter without a prior judicial hearing violated petitioner's constitutional rights to procedural due process.

I. *Background*

For purposes of this motion, we rely on the parties' stipulations of facts and exhibits, and other admissible materials in evidence at trial.

On June 1, 1990, petitioner filed for bankruptcy under chapter 7 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. On January 28, 1991, the bankruptcy court lifted the automatic stay and permitted petitions to be filed in the Tax Court for purposes of initiating the instant declaratory judgment action and a related deficiency proceeding, docket No. 2009–91.

Petitioner was organized in 1963 as a Delaware not-for-profit corporation. Its stated purpose is as follows:

THIRD. The nature of the business and the objects and purposes to be transacted, promoted and carried on, are to do any and all of the things

---

[1] Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 or the Internal Revenue Code of 1986, depending on the period of time referred to.

herein set forth as fully and to the same extent as natural persons might or could do, and in any part of the world, viz.:

A. To promote, encourage, and assist in programs of

1. Research designed to find the cause and cure of cancer,

2. Public and professional education with regard to cancer,

3. Service to cancer patients;

B. To coordinate the efforts of Member Agencies engaged in these works;

C. To facilitate the exchange of ideas, plans, programs and procedures among associations engaged in research, care, service, and professional and public education in the field of cancer.

Petitioner is a membership organization. Its members consist of local cancer agencies throughout the country.

By letter dated March 31, 1969, respondent ruled that petitioner was exempt from Federal income tax under section 501(c)(3) and that donors may deduct contributions to petitioner. The ruling letter states, in pertinent part, as follows:

Based on information supplied, we rule that you are exempt from Federal income tax under section 501(c)(3) * * *. This ruling assumes your operations will be as stated in your exemption application. * * *

\* \* \* \* \* \* \*

Donors may deduct contributions to you, as provided by section 170 * * *. Bequests, legacies, devises, transfers, or gifts to you or for your use are deductible for Federal estate and gift tax purposes under sections 2055, 2106, and 2522 * * *.

If you change your purposes, character, or method of operation, please let your District Director know, so that he may consider the effect on your exempt status. * * *

Before 1984, petitioner depended primarily for funds on dues received from its local member affiliates and other members. Some affiliates indicated an intention to withdraw from petitioner, precipitating a budget crisis. In 1983, petitioner's board of directors directed petitioner's executive director to conduct a search for a professional fundraiser that could assist petitioner in conducting fundraising to meet its increased need for funds, without the necessity of petitioner's contributing initial capital for the fundraising effort. As a result, during 1983, petitioner and Watson & Hughey Co. (hereinafter sometimes referred to as W&H), discussed their possible entry into a fundraising contract.

On June 11, 1984, petitioner and W&H entered into a "Full Service Direct Response Fundraising Agreement" for a specified 5-year term. This fundraising agreement was amended

by an addendum on April 8-9, 1987. The fundraising agreement expired in 1989, and was not renewed by petitioner.

On November 2, 1990, respondent issued to petitioner a final notice of revocation of the favorable ruling letter, retroactive to June 11, 1984. The notice of revocation states, in pertinent part, as follows:[3]

We have completed our review of your activities, and examination of your Forms 990 for the years ending December 31, 1986 and December 31, 1987.

By a determination letter dated March 31, 1969, we recognized your exemption from Federal Income tax under section 501(c)(3) * * *.

As a result of the examination of your activities and financial records for the years noted above, we had unresolved questions concerning your mailings and your exempt status. On July 12, 1989, we requested technical advice from our National Office in order to resolve these questions.

In response to the request for technical advice, our National Office ruled that your exemption from income tax should be revoked effective June 11, 1984.

\* \* \* \* \* \* \*

This letter constitutes formal notification of revocation of your exemption from Federal income tax effective June 11, 1984.

\* \* \* \* \* \* \*

Contributions to you are no longer deductible as provided in section 170 * * *.

On November 2, 1990, respondent also issued to petitioner a notice of deficiency with respect to its income tax for 1986 and 1987.

On January 30, 1991, after the bankruptcy court lifted the automatic stay, petitioner filed its petition initiating the instant declaratory judgment action pursuant to section 7428. Petitioner asks for a declaratory judgment that it "is exempt from income tax under Code Section 501(c)(3), and is eligible to receive tax deductible contributions under Section 170(c)(2), for all periods beginning June 11, 1984."

On January 30, 1991, petitioner also filed its petition initiating a proceeding for review of the notice of deficiency issued to it for 1986 and 1987, *United Cancer Council, Inc. v. Commissioner,* docket No. 2009–91. The parties have

---

[3] There are some slight differences between the notice of revocation letter identified by both sides in the pleadings, and the one that the parties have stipulated in the administrative record. We have used the letter in the administrative record. However, these differences appear to be irrelevant to any matter in dispute.

agreed that the deficiency proceeding should be held in abeyance pending the resolution of the declaratory judgment action.

II. *Discussion*

A. *Jurisdiction*

Before we consider the merits of petitioner's motion, we deal with the threshold question of respondent's challenge to our jurisdiction to entertain the motion. Respondent contends that the Court lacks the subject matter jurisdiction to grant petitioner the relief it seeks. She points out that this Court is a court of limited jurisdiction and that it does not possess the Federal question jurisdiction of a U.S. District Court or a District Court's mandamus powers to order respondent to reinstate the revoked ruling letter. She acknowledges, however, that petitioner is, in effect, asking us to rule that the judicial review that is provided in section 7428 is constitutionally insufficient.

Section 7428 confers jurisdiction on this Court to make a declaration with respect to certain issues pertaining to a tax-exempt organization, if the jurisdictional requirements are met.

Petitioner's motion for summary judgment essentially calls into question this Court's subject-matter jurisdiction to entertain the present declaratory judgment action concerning petitioner's continued qualification under section 501(c)(3) for the years in issue. A specific jurisdictional requirement of section 7428 is that respondent must either make a "determination" within the meaning of section 7428(a)(1) or, alternatively, "fail to make a determination" within the meaning of section 7428(a)(2). If respondent's action in revoking the favorable ruling letter violated petitioner's rights to procedural due process, as petitioner contends, then (1) the revocation would be invalid and (2) respondent, in order to revoke the ruling letter, would have to institute further proceedings which accord petitioner the appropriate due process. As a result, there would have been no "determination" by respondent with respect to petitioner's continuing qualification as a tax-exempt organization under section 501(c)(3).

A question then would arise as to whether we have jurisdiction to proceed with the instant declaratory judgment

proceeding. Even if we were to conclude that we do have jurisdiction (as under the rationale of *Anclote Psychiatric Center v. Commissioner,* 98 T.C. 374 (1992)), then there still would be a question as to burden of proof. See Rule 217(c)(2)(B); *Gladstone Foundation v. Commissioner,* 77 T.C. 221, 237 (Simpson, J., concurring), 245 (Chabot, J., dissenting) (1981).

Thus, without regard to the Federal question jurisdiction or mandamus power that respondent points to, it is evident that our conclusion as to the merits of petitioner's motion could well affect our jurisdiction of the instant case and the allocation of the burden of proof between the parties. We have jurisdiction to decide our jurisdiction, e.g., *Normac, Inc. v. Commissioner,* 90 T.C. 142, 146 (1988), and certainly have jurisdiction to determine the burden of proof in a case before us.

Accordingly, we conclude that we have jurisdiction to consider and rule on petitioner's motion.

B. *Due Process*

Petitioner contends that: (1) Respondent had to initiate a judicial hearing on petitioner's qualification for tax-exempt status under section 501(c)(3) prior to revoking petitioner's favorable ruling letter, because revocation infringes on petitioner's exercise of its First Amendment rights; and (2) petitioner was entitled to a prerevocation hearing before a judicial officer, because petitioner has a property interest in respondent's prior recognition of petitioner's tax-exempt status. Petitioner asserts that respondent's revocation of the ruling letter, without a judicial hearing in which respondent had the burden of proof, deprived petitioner of liberty or property without procedural due process.

Respondent maintains that the revocation of the ruling letter complies fully with the requirements of procedural due process.

We agree with respondent that petitioner was not denied procedural due process.

A motion for summary judgment is to be granted if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Although there are disputes in the instant case

about facts and about mixed matters of fact and law, neither party contends that those disputes affect the resolution of petitioner's motion. Accordingly, we proceed to consider whether petitioner is entitled to a decision as a matter of law.

### The Constitution

The Fifth Amendment to the Constitution prohibits the Government from depriving any person of liberty or property without due process of law.[4] Due process, however, is flexible and calls for such procedural protections as the particular situation demands. E.g., *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972). The procedural protections required must be determined with reference to the private and governmental rights and interests involved in the particular case. E.g., *Washington v. Harper,* 494 U.S. 210, 228 (1990).[5]

### The Bob Jones Decision and Section 7428

The Supreme Court's opinion in *Bob Jones University v. Simon,* 416 U.S. 725 (1974), is almost on all fours with the instant case.

Bob Jones University received a favorable tax exemption ruling letter in 1942. In 1970, respondent announced that private schools which maintained racially discriminatory admissions policies would no longer be treated as exempt charities, and contributions to such schools would no longer be treated as deductible. In response to respondent's request for proof of nondiscriminatory admissions policy, Bob Jones University advised that it did not admit blacks, and that it did not intend to change this policy. Respondent began administrative proceedings which would lead to revocation of Bob Jones University's favorable ruling letter. Bob Jones University sued in Federal District Court to enjoin respondent from revoking or threatening to revoke the favorable ruling letter. Bob Jones University contended that the threatened revocation was outside respondent's lawful authority and would violate the school's rights to free exercise of reli-

---

[4] The Fifth Amendment to the Constitution provides, in pertinent part, as follows: "No person shall * * * be deprived of life, liberty, or property, without due process of law".

[5] These two cited cases involve the Due Process Clause of the Fourteenth Amendment which is essentially the same as the Fifth Amendment language set forth *supra* note 4. See, e.g., *Mathews v. Eldridge,* 424 U.S. 319, 332-335 (1976).

gion, freedom of association, and due process and equal protection of the laws. *Bob Jones University v. Simon,* 416 U.S. at 735-736.

Bob Jones University contended that its suit did not fall under the language of the Anti-Injunction Act (sec. 7421(a)); the Supreme Court held that it did. *Bob Jones University v. Simon,* 416 U.S. at 738-742. Bob Jones University contended that its suit came within a broadened exception to section 7421(a); the Supreme Court refused to accept the broadened exception. *Id.* at 742-746.

Bob Jones University then contended that, if it could not stop respondent from revoking, or threatening to revoke, the favorable ruling letter, then its due process rights would be violated "in light of the irreparable injury it will suffer pending resort to alternative procedures for review and of the alleged inadequacy of those remedies at law." *Id.* at 746.

The Supreme Court analyzed the real-world significance of a favorable ruling letter and inclusion in respondent's periodically updated so-called Cumulative List. The Supreme Court noted that "appearance on the Cumulative List is a prerequisite to successful fund raising for most charitable organizations. Many contributors simply will not make donations to an organization that does not appear on the Cumulative List." *Id.* at 729-730 (fn. ref. omitted). The Supreme Court then proceeded to respond to Bob Jones University's constitutional challenge as follows (*id.* at 746-748):

Assuming, *arguendo,* the applicability of §7421(a) and *Williams Packing,* [*Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1 (1962)] * * * [the school] contends that forcing it to meet the standards of those authorities will deny it due process of law in light of the irreparable injury it will suffer pending resort to alternative procedures for review and of the alleged inadequacies of those remedies at law. The Court dismissed out of hand similar contentions nearly 60 years ago, and we find such arguments no more compelling now than then.

This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different. If, as alleged in its complaint, * * * [the school] will have taxable income upon the withdrawal of its §501(c)(3) status, it may in accordance with prescribed procedures petition the Tax Court to review the assessment of income taxes. Alternatively, * * * [the school] may pay income taxes, or, in their absence, an installment of FICA or FUTA taxes, exhaust the Service's internal refund procedures, and then bring suit for a refund. These review procedures offer * * * [the school] a full, albeit delayed, oppor-

tunity to litigate the legality of the Service's revocation of tax-exempt status and withdrawal of advance assurance of deductibility.

We do not say that these avenues of review are the best that can be devised. They present serious problems of delay, during which the flow of donations to an organization will be impaired and in some cases perhaps even terminated. But, as the Service notes, some delay may be an inevitable consequence of the fact that disputes between the Service and a party challenging the Service's actions are not susceptible of instant resolution through litigation. And although the congressional restriction to postenforcement review may place an organization claiming tax-exempt status in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities, in light of the powerful governmental interests in protecting the administration of the tax system from premature judicial interference, and of the opportunities for review that are available.

[Citations and fn. refs. omitted.]

After thus rejecting the constitutional claim, the Supreme Court (1) concluded that Bob Jones University's suit did not meet the *Williams Packing* standard for a judicial exception to the Anti-Injunction Act, *Bob Jones University v. Simon,* 416 U.S. at 748-749, and then (2) commented as follows, *id.* at 749-750:

In holding that §7421(a) blocks the present suit, we are not unaware that Congress has imposed an especially harsh regime on §501(c)(3) organizations threatened with loss of tax-exempt status and with withdrawal of advance assurance of deductibility of contributions. A former Commissioner of Internal Revenue has sharply criticized the system applicable to such organizations. The degree of bureaucratic control that, practically speaking, has been placed in the Service over those in * * * [the school's] position is susceptible of abuse, regardless of how conscientiously the Service may attempt to carry out its responsibilities. Specific treatment of not-for-profit organizations to allow them to seek pre-enforcement review may well merit consideration. But this matter is for Congress, which is the appropriate body to weigh the relevant, policy-laden considerations, such as the harshness of the present law, the consequences of an unjustified revocation of §501(c)(3) status, the number of organizations in any year threatened with such revocation, the comparability of those organizations to others which rely on the Service's ruling-letter program, and the litigation burden on the Service and the effect on the assessment and collection of federal taxes if the law were to be changed. [Fn. ref. omitted.]

At the time the Supreme Court published its opinion with this call to the Congress—May 15, 1974—both Houses of the Congress had already passed legislation providing for declaratory judgment procedures as to tax qualification of

employee retirement plans, and the conference committee on that legislation began on that same day to meet to resolve the differences between the two Houses' bills. That declaratory judgment provision, enacted as part of the Employee Retirement Income Security Act of 1974, became section 7476.

In 1976, following its own earlier initiative and the Supreme Court's decision in *Bob Jones University v. Simon, supra,* Congress enacted section 7428, which now provides, in pertinent part, as follows:

SEC. 7428. DECLARATORY JUDGMENTS RELATING TO STATUS AND CLASSIFICATION OF ORGANIZATIONS UNDER SECTION 501(c)(3), ETC.

(a) CREATION OF REMEDY.—In the case of actual controversy involving—

   (1) a determination by the Secretary—

      (A) with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2),

*   *   *   *   *   *   *

upon the filing of an appropriate pleading, the United States Tax Court, the United States Claims Court, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification * * * . Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such. For purposes of this section, a determination with respect to a continuing qualification * * * includes any revocation of or other change in a qualification * * *.

*   *   *   *   *   *   *

(c) VALIDATION OF CERTAIN CONTRIBUTIONS MADE DURING PENDENCY OF PROCEEDINGS.—

   (1) IN GENERAL.—If—

      (A) the issue referred to in subsection (a)(1) involves the revocation of a determination that the organization is described in section 170(c)(2),

      (B) a proceeding under this section is initiated within the time provided by subsection (b)(3), and

      (C) either—

         (i) a decision of the Tax Court has become final (within the meaning of section 7481), or

         (ii) a judgment of the district court of the United States for the District of Columbia has been entered, or

         (iii) a judgment of the Claims Court has been entered,

and such decision or judgment, as the case may be, determines that the organization was not described in section 170(c)(2),

then notwithstanding such decision or judgment, such organization shall be treated as having been described in section 170(c)(2) for purposes of section 170 for the period beginning on the date on which the notice of revocation was published and ending on the date on which the court first determined in such proceeding that the organization was not described in section 170(c)(2).

(2) LIMITATION.—Paragraph (1) shall apply only—

(A) with respect to individuals, and only to the extent that the aggregate of contributions made by any individual to or for the use of the organization during the period specified in paragraph (1) does not exceed $1,000 (for this purpose treating husband and wife as one contributor), and

(B) with respect to organizations described in section 170(c)(2) which are exempt from tax under section 501(a) (for this purpose excluding any such organization with respect to which there is pending a proceeding to revoke the determination under section 170(c)(2)).

(3) EXCEPTION.—This subsection shall not apply to any individual who was responsible, in whole or in part, for the activities (or failures to act) on the part of the organization which were the basis for the revocation.

Applying the learning of *Bob Jones University v. Simon,* *supra,* to the law and the facts of the instant case, we conclude that (1) petitioner's loss of its favorable ruling letter is not a deprivation of liberty or property without due process of law, (2) petitioner has an adequate remedy at law, in 1974 terms, in that it had a reasonably prompt notice of deficiency which was promptly petitioned to this Court, and (3) petitioner has been given procedural safeguards unavailable in 1974, which (a) allow prompt access to the courts even if no tax liability were determined against it and (b) provide tax protection to contributors during the litigation process.

Because petitioner and its contributors have more procedural protection than was available to Bob Jones University in 1974, and the Supreme Court held that what was available to Bob Jones University in 1974 was sufficient, it follows that *Bob Jones University v. Simon, supra,* is an a fortiori precedent requiring denial of petitioner's motion.

*Petitioner's Procedural Due Process Contentions*

Ironically, in view of its commencement of the present declaratory judgment action pursuant to section 7428, petitioner's counsel contended in oral argument that—

[Section 7428] is a statute which is a well-written statute, but I think in light of evolving law in the intervening 14 years, that decisions which have been reached by courts and as courts have amplified and the notion of procedural due process has evolved, that we have reached at this point in the country a different understanding of due process and what must be required in terms of procedure when government seeks to curtail and revoke a right which is dependent upon the status previously attained. So I think the decisions which I have cited [the *Haitian Refugee Center* case and other cases discussed *infra,*] compel the conclusion which I have suggested to the Court.

\* \* \* \* \* \* \*

We think the reasoning in these cases [which include the *Haitian Refugee Center* case and certain First Amendment cases also discussed *infra,*] pertains equally to the present case, and we submit that our client was denied procedural due process. What that would entail for the Court to grant our motion would be, we would have to, in effect, renew this process [of respondent's revocation of the prior ruling letter recognizing petitioner's tax-exempt status] at the administrative level. But at that level, we would have a right to an independent hearing before a judicial officer, and in that hearing, the burden would be on the government, and the burden of going forward to initiate the hearing would also be on the government, quite the reverse from what has taken place in the present revocation procedure.

In its memorandum of law, petitioner, while not representing that the Supreme Court has since overruled *Bob Jones University v. Simon, supra,* essentially contends the case is not controlling because it is no longer valid law. Petitioner asserts as follows:

The Supreme Court's decision in *Bob Jones University v. Simon,* 416 U.S. 725 (1974), that the Anti-Injunction Act bars a suit by an organization to enjoin Respondent from revoking an organization's exempt status, is not dispositive.

First, UCC did not file suit to enjoin the issuance of the revocation notice. This action was filed pursuant to Code Section 7428, which specifically permits UCC to seek declaratory relief regarding the propriety of revoking UCC's exempt status. UCC merely seeks review of the deficiencies in the procedure Respondent implemented in revoking UCC's exempt status.

Second, since *Bob Jones,* the Supreme Court has ruled that solicitation of charitable contributions enjoys full First Amendment protection. Respondent based its revocation in substantial part on UCC's fundraising practices which necessarily affected UCC's First Amendment rights. As noted, where an organization's First Amendment rights are implicated, it is entitled to prior, prompt judicial review initiated by the government.

Third, the evolving concept of procedural due process since *Bob Jones* has resulted in according to a governmentally conferred entitlement, the

status of a protected property right which cannot be deprived absent a prior hearing.

Firstly, our reliance on the *Bob Jones University v. Simon, supra,* opinion focuses on that part of the opinion dealing with procedural due process that must be afforded when respondent considers revocation of a favorable section 501(c)(3)-170(c) ruling. That is precisely the issue that petitioner asks us to rule on in the motion before us. Thus, *Bob Jones University v. Simon, supra,* is squarely in point. The Anti-Injunction Act analysis of *Bob Jones University* may be distinguishable, but we have not relied on *Bob Jones University* for its Anti-Injunction Act analysis.

Secondly, petitioner's claimed First Amendment rights are being considered at this point in the light of petitioner's due process contentions. We note that, in *Bob Jones University v. Simon, supra,* the school's claimed First Amendment rights were also before the Supreme Court and the Supreme Court did not regard those claimed rights as affecting the school's procedural due process rights in connection with the revocation of a favorable tax ruling.

Thirdly, we approach with caution the task of deciding whether the Supreme Court would now hold that it erred in *Bob Jones University v. Simon, supra,* or that evolving notions of procedural due process have made its pronouncements in that opinion obsolete in any respect that would affect petitioner's motion.[6]

*Process Required—Petitioner's Liberty Interest*

The Court previously denied petitioner's motion for summary judgment with respect to whether respondent's revocation of the ruling letter unconstitutionally infringed upon certain of petitioner's First Amendment rights. Nevertheless, petitioner's position that respondent was required to initiate judicial review before revoking the ruling letter is based on its contention that respondent's revocation, in substantial part, was based on respondent's disapproval of the arrangement between petitioner and its private fundraiser. Peti-

---

[6] Cf. *Barnette v. West Virginia State Bd. of Educ.,* 47 F. Supp. 251, 252-253 (S.D.W. Va. 1942), in which a three-judge District Court concluded that the Supreme Court had so "impaired as an authority" the opinion in *Minersville District v. Gobitis,* 310 U.S. 586 (1940), that the District Court no longer felt constrained to follow the latter opinion. In that instance, the District Court was vindicated. *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624 (1943).

tioner contends that respondent is, in effect, trying to regulate and restrict the fundraising efforts undertaken by charitable organizations, and equates the revocation of the ruling letter to a prior restraint on petitioner's First Amendment-protected free speech rights.

Petitioner relies heavily on several Supreme Court cases striking down, on First Amendment grounds, State statutes which prohibited charitable organizations from engaging in fundraising. The statutes in question required charitable organizations to register, and generally prohibited them from conducting fundraising unless a requisite percentage of the fundraising proceeds would be used for charitable purposes, as opposed to paying fundraising costs. These cases are *Riley v. National Fed. of Blind,* 487 U.S. 781 (1988) (invalidating a statute which (a) prohibited "unreasonable" fees for charitable fundraising, (b) required certain disclosures in the fundraising solicitations, and (c) required professional fundraisers to be licensed); *Secretary of State of Md. v. J.H. Munson Co.,* 467 U.S. 947 (1984) (invalidating a statute which prohibited charitable organizations from paying or agreeing to pay fundraising expenses exceeding 25 percent of the funds raised, notwithstanding that the statute authorized a waiver of the limitation where it was established that such limitation prevented a charitable organization from raising funds); and *Schaumburg v. Citizens for Better Environ.,* 444 U.S. 620 (1980) (invalidating a statute which prohibited solicitation by charitable organizations not using at least 75 percent of their receipts for charitable purposes). In these cited cases, as petitioner notes, the Supreme Court recognized that solicitation of financial support by the charitable organizations involved a variety of protected free-speech interests.

With respect to its contention that respondent is constitutionally required to first initiate judicial action to revoke the ruling letter, petitioner further relies on an opinion by the Court of Appeals for the Fourth Circuit in another charitable solicitation case, *Famine Relief Fund v. State of W. Va.,* 905 F.2d 747 (4th Cir. 1990). In *Famine Relief Fund,* the statute provided that a charity that was denied a license to solicit contributions could ask for a hearing before a commission on charitable organizations. If the commission upheld the denial of the license, then the charity would bear the burden of

initiating judicial review. Further, during the pendency of the lawsuit, the charity was prohibited from soliciting contributions. The Court of Appeals (1) concluded that the statute was not facially unconstitutional on First Amendment grounds, (2) declined to rule on the factual questions of whether the statute as applied violated the First Amendment, and (3) held that the charity's Fourteenth Amendment due process rights are violated by the procedure mandated by the statute for challenging denial of a license to solicit. The Court of Appeals stated as follows, 905 F.2d at 753:

> The Supreme Court has enunciated three due process protections required for any prior restraint on speech. See *Freedman v. Maryland,* 380 U.S. 51 * * * (1965) (invalidating requirement of state license prior to public screening of films). First, the state must initiate judicial action to restrict a person's first amendment right, and the state must have the burden of proof in the action. Second, any regulatory act must provide assurance that the free exercise of protected speech will not be delayed while the state seeks judicial review. Third, judicial review must be prompt.

Petitioner contends that "Due process requires that the taxpayer must not bear the burden of justifying entitlement to tax exempt status when denial of such status is based on the exercise of First Amendment rights."

Firstly, petitioner ignores that in *Bob Jones University v. Simon,* 416 U.S. 725 (1974), substantial constitutional issues had been raised. The Supreme Court in *Bob Jones University,* however, deemed it unnecessary to address the merits of the school's claim that revocation of the school's favorable ruling letter due to the Internal Revenue Service's position that exemption under section 501(c)(3) was not available to racially discriminatory schools, would unconstitutionally infringe upon the school's First Amendment, due process, and equal protection rights. The Supreme Court, instead, held that any such contentions could be dealt with by normal methods of judicial review, in particular tax deficiency suits and tax refund suits. In fact, Bob Jones University's claim of unconstitutional infringement of its First Amendment religious rights (the merits of which could not be addressed in the preenforcement injunctive suit) was adjudicated in the subsequent refund suit for unemployment taxes which the school brought. See *Bob Jones University v. United States,* 461 U.S. 574 (1983) (no unconstitutional infringement found because school's religious interests could not be accommo-

dated with the Government's compelling interest in eradicating racial discrimination and no less restrictive means existed for vindicating this governmental interest).

Secondly, the events in the instant case have already occurred. The restraint—if there is one for constitutional purposes—is not a prior restraint. Accordingly the prior restraint cases, from *Near v. Minnesota,* 283 U.S. 697 (1931), through those cited by petitioner, are not in point. Petitioner is already having its day in court on the underlying issues. And, as a result of section 7428(c), contributors retain deduction protection during the pendency of the proceeding in the instant case.

Thirdly, the cases on which petitioner relies all involve prohibitions on soliciting contributions. The instant case involves only the organization's tax status.

*Process Required—Petitioner's Property Interest*

Petitioner contends that it has a vital property interest in the ruling letter that respondent issued and that it cannot be deprived of this property interest without a prior hearing. Petitioner cites *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555, 1562 (11th Cir. 1989), affd. sub nom. *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991), wherein the Court of Appeals for the Eleventh Circuit stated as follows:

Congress may, through the enactment of legislation, create a substantial entitlement to a particular governmental benefit. See, e.g., *Goldberg v. Kelly,* 397 U.S. 254, 262 * * * (1970) (federally created property interest exists in continued receipt of welfare benefits). Once Congress chooses to create such a system of entitlements and promulgates rules which restrict the discretion of administrative officers to grant benefits under the system, a property interest is created that is accorded procedural due process protections. See *Board of Regents v. Roth,* 408 U.S. 564, 576-577 * * * (1972).

Petitioner further contends as follows:

Once an interest in a government benefit is deemed a property interest, due process requires that the party be afforded a hearing *before* it may be deprived of the benefit. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985). "Relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'". *Bell v. Burson,* 402 U.S. 535 (1971) (revocation of clergyman's driver's license for cause could not occur prior to meaningful

pretermination hearing). Except in emergency situations,[2] due process requires that a hearing must be held before the termination of the property interest may occur. *Board of Regents v. Roth,* 408 U.S. 564, 569-70, 570 n.7 (1972).

---

[2] No allegation has been raised by respondent that the revocation of UCC's exempt status was tantamount to an emergency.

In *Bob Jones University v. Simon,* 416 U.S. at 725, the Supreme Court specifically held that the Internal Revenue Service's revocation of the ruling letter issued to the school would not violate the school's right to due process, because of the adequate postenforcement avenues of review available to the school. Although the school in *Bob Jones University v. Simon, supra,* may not have technically asserted a property interest in the ruling letter issued to it, as does petitioner here, we think that distinction is immaterial and would not have affected the case's outcome. The Supreme Court in *Bob Jones University* recognized that the ruling letter conferred an important benefit on the school. Notwithstanding that fact and the substantial First Amendment religious liberty interest of the school, the Supreme Court held that restricting the school to seeking judicial review after revocation of the ruling letter did not violate due process. It determined that the school's private rights and interests were outweighed by the Government's powerful interest in protecting the tax system from premature judicial interference.

Petitioner has not directed us to, and we have not found, any Supreme Court opinion stating that the analysis in *Bob Jones University v. Simon, supra,* is no longer the law, or modifying the opinion in any way. As we have noted, that opinion appears to us to be squarely on point.

Two Courts of Appeals have indicated that the *Bob Jones University* analysis has been supplemented or modified; they have followed an analysis derived from *Mathews v. Eldridge,* 424 U.S. 319 (1976), as to due process prior review contentions in connection with frivolous income tax return civil penalties under section 6702. *Kahn v. United States,* 753 F.2d 1208, 1217-1222 (3d Cir. 1985); *Jolly v. United States,* 764 F.2d 642, 645-647 (9th Cir. 1985). In these cases, the courts have concluded that no "predeprivation" hearing is required before assessment under section 6702.

The parties have not pointed us to, and we have not found, any published opinions applying the *Mathews v. Eldridge, supra,* analysis to revocations of favorable exempt organization ruling letters; in reliance on *Bob Jones University v. Simon, supra,* we see no need to do so in the instant case. We note that, unlike the situation with respect to the section 6702 frivolous tax return penalty, the statute provides, in exempt organization situations, (1) an opportunity for judicial review before any income tax must be paid and (2) validation of certain contributions made during the pendency of the litigation. Thus, even if the favorable ruling letter may be said to be "property" in which petitioner has a "protected interest", the statute provides for a procedure which involves some elements of predeprivation protection.

In the meanwhile, respondent has not seized petitioner's assets (unlike the situation faced in *Commissioner v. Shapiro,* 424 U.S. 614 (1976)), respondent has not forbidden petitioner to exercise its claimed rights under the First Amendment (unlike the charitable solicitation cases), and individual donors continue to be permitted to make limited tax-deductible contributions to petitioner (unlike the situation faced in *Bob Jones University v. Simon, supra*).

*Conclusion*

Based on the foregoing, we conclude that petitioner, as a matter of law, is not entitled to summary judgment. Even if petitioner is treated as having a "property interest" in the ruling letter, procedural due process did not require respondent to initiate a judicial hearing before revoking the ruling letter.

We hold for respondent.

> *An appropriate order will be issued denying petitioner's motion for summary judgment.*