Francine STREICH, et al., Plaintiffs,

v.

PENNSYLVANIA COMMISSION ON CHARITABLE ORGANIZATIONS, et al., Defendants.

Civ. A. No. 81–1031.

United States District Court, M. D. Pennsylvania.

Oct. 21, 1981.

Stephen R. Bachmann, Bachmann, Welt-chek & Powers, New Orleans, La., for plaintiffs; Stuart S. Sacks, Harrisburg, Pa., of counsel.

Mary Ellen Krober, Deputy Atty. Gen., Com. of Pa., Dept. of Justice, Harrisburg, Pa., for defendants.

### MEMORANDUM

HERMAN, District Judge.

#### I. Introduction

This memorandum constitutes the findings of fact and conclusions of law in support of our Order of October 2, 1981 denying Plaintiffs' motion for preliminary injunction. Plaintiffs in this action, two nonprofit corporations and three individuals, seek to enjoin the Pennsylvania Commission on Charitable Organizations (hereinafter referred to as "the Commission") and the Attorney General of the Commonwealth of Pennsylvania from enforcing the Solicitation of Charitable Funds Act, 10 P.S. §§ 160–1 to 16, (hereinafter referred to as "the Act") against Plaintiffs, their agents, others similarly situated, and the public in general. They request both preliminary and permanent relief [1] as well as compensatory damages. The action is brought pursuant to 42 U.S.C. §§ 1983 & 1988, and the First and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the Act suffers from no less than eight constitutional defects.

██ The availability of preliminary injunctive relief is dependent upon a consideration of four factors. The burden rests on the moving party to demonstrate (1) a reasonable probability of eventual success on the merits and (2) that they will be irreparably injured *pendente lite* if relief is not granted. In addition, the court should take into account (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *Constructors Association of Western Pennsylvania v. Kreps*, 573 F.2d 811, 814–15 (3d Cir. 1978).

Because we agree with the Defendants that substantial issues relating to the doctrines of abstention, ripeness and standing are present, we find that the Plaintiffs have not carried their burden of showing a reasonable likelihood of success on the merits. Preliminary relief is not appropriate in this instance, when it appears questionable whether or not the case will proceed to the merits of the claims.

#### II. The Organizational Plaintiffs

The organizational plaintiffs in this action, the Pennsylvania Institute for Community Affairs (hereinafter "PICA") and the Association of Community Organizations for Reform Now (hereinafter "ACORN"), allege that they wish to solicit money from the citizens of Pennsylvania without registering as charitable organizations in compliance with the provisions of the Act. They contend that the Act unconstitutionally infringes upon their rights to engage in charitable solicitation, a protected First Amendment activity.

#### A. Plaintiff ACORN

Plaintiff ACORN previously conducted canvassing and solicitation campaigns in Pennsylvania until it was designated as a "charitable organization" and required to register with the Pennsylvania Commission on Charitable Organizations. ACORN disputes that designation and has appealed the Commission's decision to the Pennsylvania Commonwealth Court.

██ While acknowledging that charitable solicitation falls within the ambit of the First Amendment's protection, *see Village of Schaumburg v. Citizens For a Better Environment*, 444 U.S. 620, 628–632, 100 S.Ct. 826, 831–834, 63 L.Ed.2d 73 (1980), and that any prior restraint on its exercise bears a heavy presumption against its constitutional validity, *see, e. g., Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963), we are not persuaded

---

1. In the prayer for permanent relief, Plaintiffs only seek to enjoin enforcement of the Act against themselves, but they request this court to declare the Act unconstitutional.

that it would be proper for us to exercise our jurisdiction over the challenges brought by Plaintiff ACORN. The abstention doctrine, as propounded in the line of cases following *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), contemplates that deference will be given to state court adjudication when the following "special circumstances" are present: First, the underlying issue of state law is uncertain; second, the statute at issue is fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question; and last, abstention may be required to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979); *D'Iorio v. County of Delaware*, 592 F.2d 681, 685–86 (3d Cir. 1978). Although the courts have generally considered abstention inappropriate in First Amendment cases, *See, e. g. Zwickler v. Koota*, 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967); *Baggett v. Bullitt*, 377 U.S. 360, 379, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964); *Citizens For a Better Environment v. Nassau County*, 488 F.2d 1353, 1362 (2d Cir. 1973), the *Babbitt* case, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) demonstrates that the *Pullman* doctrine may be invoked in a First Amendment context. In *Babbitt*, the Supreme Court directed abstention in an action attacking the constitutionality of an Arizona statute limiting union publicity. *Id.* Although we do not definitively decide the question, we believe that the *Pullman* abstention doctrine is implicated in this case. The Commonwealth Court may construe the Act so as to alleviate the alleged constitutional defects, or may vindicate ACORN's claim that the provisions of the Act do not apply to its activi-

ties. Certainly, such a result would present the case to us in a substantially different posture, or perhaps obviate altogether the need for a decision on the constitutional grounds. *Christy v. Hammel*, 87 F.R.D. 381, 384 (M.D.Pa.1980). *Liberty Curtin Concerned Parents v. Keystone Central School District*, 81 F.R.D. 590, 597–598 (M.D.Pa.1978).

Furthermore, the abstention considerations advanced in the cases following *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) also merit attention here. *Younger* and its progeny established the principle that the federal courts should hesitate to interfere with an ongoing enforcement action brought by the state in its sovereign capacity[2] when the state court could hear and resolve his federal claims in the same proceeding. *Trainor v. Hernandez*, 431 U.S. 434, 440 & 444, 97 S.Ct. 1911, 1916 & 1918, 52 L.Ed.2d 486 (1977). The *Younger* abstention doctrine has been extended to civil litigation in limited circumstances only and the extent to which it applies in the civil context is still somewhat uncertain. *See Johnson v. Kelly*, 583 F.2d 1242 (3d Cir. 1978). Nevertheless, we echo the concerns voiced by Justice Rehnquist in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), a civil proceeding under Ohio's public nuisance statute.

> [I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the State court's ability to enforce constitutional principles.

*Id.* at 604, 95 S.Ct. at 1208.

ACORN's appeal from the Commission's determination is presently pending before

---

**2.** The precise scope of the preliminary relief requested by Plaintiffs is somewhat uncertain. Since they ask this court in general terms to enjoin enforcement of the Act, we presume that they also desire to enjoin the pending

Commonwealth Court action. That appeal is the direct consequence of the Commission's previous action against ACORN enforcing the provisions of the Act.

Commonwealth Court. Clearly, the Commonwealth of Pennsylvania possesses a vital interest in executing and vindicating the policies underlying the Solicitation of Charitable Funds Act. ACORN did not raise its constitutional objections before the Commission, but it is not precluded from doing so on appeal, *see* 2 Pa.C.S. § 703, and the Commonwealth Court is most competent to adjudicate the constitutional issues. *Claflin v. Houseman*, 93 U.S. 130, 136, 23 L.Ed. 833 (1876).

### B. Plaintiff PICA

 Similarly, Plaintiff PICA has not convincingly shown that its claim is ripe for adjudication. Admittedly, this question is an exceedingly close one. A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The mere existence of a statute or regulatory program that may "chill" a party's activity because of the subjective and speculative belief in the possibility of future enforcement is not sufficient to present a case or controversy within the meaning of Article III of the Constitution. *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972). For these purposes, a specific present objective harm or a threat of specific future harm is necessary. *Id.* Although it has been consistently held that failure to apply for a license, or the absence of current enforcement action does not preclude a party from challenging the constitutionality of an ordinance on its face, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969); *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965), there is no indication here that Defendants have done anything more than inform PICA that it is expected to comply with the law. *See Nypirg v. Town of Hempstead*, No. 78–2097 (E.D.N.Y. Feb. 1, 1979) *quoted in New York Public Interest v. Village of Roslyn Estates*, 498 F.Supp. 922, 928 (D.C.N.Y.1979). Plaintiff PICA, for its part, has merely expressed its intention to begin solicitation and inquired as to what is required under the Act if it wishes to carry out its proposed canvassing. PICA has never carried on canvassing of this nature before, and testimony as to its precise plans was particularly vague and unfocused. PICA's position is not unlike that of the intervening plaintiffs in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), who claimed that the prosecution of plaintiff Harris under California's criminal syndicalism statute inhibited them from peacefully advocating their political views. *Id.* at 39 & 42, 91 S.Ct. at 748 & 749. *Cf. Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974) (plaintiff warned twice to stop handbilling). Under these circumstances, it is questionable whether PICA is presenting an actual controversy or requesting this court to render an advisory opinion.

### III. The Individual Plaintiffs

### A. Plaintiffs Kest and Streich

 In regard to the individual plaintiffs, there is considerable doubt whether they possess the requisite standing to assert their claims. In the absence of a statute conferring standing, federal plaintiffs must allege some concrete impingement upon their personal interests, *Frissell v. Rizzo*, 597 F.2d 840, 846 (3d Cir. 1979), *cert. denied*, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1980). *See also Schlesinger v. Reservists to Stop The War*, 418 U.S. 208, 217–227, 94 S.Ct. 2925, 2930–2935, 41 L.Ed.2d 706 (1974); *Linda R. S. v. Richard D.*, 410 U.S. 614, 617–618, 93 S.Ct. 1146, 1148–1149, 35 L.Ed.2d 536 (1973); *Flast v. Cohen*, 392 U.S. 83, 101–102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), or, in appropriate cases, some substantial infringement of the rights of other parties not before the court. *Village of Schaumburg v. Citizens For a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 835, 63 L.Ed.2d 73 (1980); *Clark v. Lutcher*, 436 F.Supp. 1266, 1269 (M.D.Pa. 1977). Plaintiff Streich serves as Training Director of PICA. Kest is Head Organizer for ACORN's Pennsylvania operation. Nei-

ther Streich nor Kest has alleged individual injury as a result of enforcement of the statute they seek to invalidate. Their respective employers, PICA and ACORN, are present before the court to vindicate their own rights. Consequently, we cannot ascertain on what grounds Streich and Kest seek to invoke the jurisdiction of this court.

### B. Plaintiff Fischer

Plaintiff Fischer claims standing as a potential "hearer" of protected speech. In certain cases, the Supreme Court has recognized the right of hearers to object to restrictions placed upon persons whom they wish to hear. *See, e. g., Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748, 756–57, 96 S.Ct. 1817, 1822–1823, 48 L.Ed.2d 346 (1976); *Procunier v. Martinez*, 416 U.S. 396, 408–409, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974); *Kleindienst v. Mandel*, 408 U.S. 753, 762–65, 92 S.Ct. 2576, 2581–83, 33 L.Ed.2d 683 (1972); *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). As pointed out in *Frissell v. Rizzo*, 597 F.2d 840 (3d Cir. 1979), *cert. denied* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1980), however, in those cases the hearer asserted an injury to an interest in a defined relationship with a specific speaker or speakers. *Id.* at 847. This requirement assures that the litigant will have more than an abstract interest in the legality of government conduct.

In this action, Reverend Fischer merely professes a desire to have PICA, ACORN and other, similar, organizations come into his Harrisburg neighborhood to canvass. PICA and ACORN do not currently operate in the Harrisburg area. Both organizations are based in Philadelphia, and neither expresses more than a vague desire to expand into the Harrisburg area at some unspecified time in the future.

This broad allegation of a generalized chilling effect appears to go beyond even the wide parameters for standing set by *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346

(1976), in which potential consumers were seeking to void Virginia's ban on price advertising for prescription drugs. The plaintiffs in that case were prescription drug users and consumer action groups, some of whose members used prescription drugs. *Id.* at 753, 96 S.Ct. at 1821. Moreover, the parties stipulated that "some pharmacies" would advertise price information in the absence of the prohibition. *Id.* at 756 n.14, 96 S.Ct. at 1823 n.14. In *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), in contrast, the Court denied standing to plaintiffs who alleged a chilling effect arising from the mere existence of an Army surveillance program and the possibility that it could be directed against them at some point in the future. *Id.* at 13, 92 S.Ct. at 2325. The facts of Reverend Fischer's case fall somewhere between *Virginia State Board of Pharmacy* and *Laird*. It is not at all clear, however, that his relationship to PICA and ACORN is more akin to the particularized interest in a speaker's activities identified in *Virginia State Board of Pharmacy* than to the undifferentiated public concern found in *Laird*.

For the above reasons, Plaintiffs' motion for a preliminary injunction is denied.