**Robert LUCAS, Rev. Craig Ransom, Plaintiffs,**

v.

**J. Joseph CURRAN, Jr., Defendant.**

**Civ. No. S 93–1660.**

United States District Court,
D. Maryland.

June 28, 1994.

262

Noland MacKenzie Canter, III, Canter & Diskin, Washington, DC, Errol Copilevitz, John P. Jennings, Jr., Copilevitz, Bryant, Gray & Jennings, P.C., Kansas City, MO, John P. Flannery, II, Leesburg, VA, for plaintiff.

J. Joseph Curran, Jr., Atty. Gen., MD., Diane Krejsa, Asst. Atty. Gen., Baltimore,

MD, Kathryn M. Rowe, Asst. Atty. Gen., Annapolis, MD, for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This case involves a challenge to Maryland's "Door-to-Door Solicitation Act," which imposes certain disclosure requirements on those persons or organizations that solicit amounts, door-to-door, in excess of two hundred dollars within the State of Maryland. *See* Md. Com. Law II Code Ann. § 14–2601 *et seq.* (1993). The plaintiffs claim that the statute violates the First and Fourteenth Amendments to the United States Constitution.[1] The defendant disputes the plaintiffs' standing to challenge the statute and the ripeness of their claim. In addition, the defendant counters that the statute regulates door-to-door solicitations, within constitutional limits, to minimize the ability of unscrupulous solicitors to obtain property from Maryland residents through the use of fraud, coercion, undue influence or intimidation. This case is currently before the Court on the parties' cross-motions for summary judgment. The motions have been fully briefed and no hearing is required. *See* Local Rule 105.6 (D.Md.). As discussed in detail below, the Court finds that the plaintiffs lack standing to challenge the Act. Even if the Court assumes for analytical purposes only that the plaintiffs have adequately established their standing, the statute comports with all constitutional requirements. Accordingly, the defendant's motion for summary judgment will be *granted*, and the plaintiffs' motion for summary judgment will be *denied*.

## I. FACTUAL BACKGROUND

In 1992, the Maryland General Assembly enacted the Maryland "Door-to-Door Solicitation Act." The Act applies to all direct or indirect requests for money or other valuable consideration and to all pledges for subsequent contributions of money or other valuable consideration that are made by a solicitor in person at a consumer's home or residence that promotes the programs or goals of the organization on whose behalf the solicitation is being made. Md. Com. Law II Code Ann. § 14–2601(c)(1). The statute expressly excludes from its requirements several types of solicitations that are subject to other provisions of state law. For example, the statute excludes solicitations that are subject to the State's consumer debt collection law, Door-to-Door Sales Act, Telephone Solicitation Act, and Insurance Code. *See* § 14–2601(c)(2)(i)–(iv).

For any solicitation that results in the acceptance or receipt by the solicitor of more than two hundred dollars, the solicitor may not accept or receive any money, check, other negotiable instrument, or other consideration at the time when the solicitation is made. § 14–2603(a)(1), (a)(2). Instead, the solicitor must give the consumer a "pledge form." § 14–2603(c). The pledge form must contain: (1) the name of the solicitor; (2) the name of the charity on whose behalf the solicitation is being made; (3) the general purposes for which the contribution will be used; (4) a disclosure statement as defined in § 14–2601(f); (5) the date and amount of the solicitation; (6) the name and address of the consumer; (7) a statement that the consumer has the right to rescind at any time after the date of the solicitation and that the pledge is not an enforceable contract; and (8) a statement that the consumer has the right to a refund or return of any contribution if made within 30 days after the contribution is made. § 14–2603(c)(1)–(8).

The disclosure statement required in the pledge form must state where a current financial statement of the organization on whose behalf the solicitation is being made is available upon request, the name of the organization on whose behalf the solicitation is being made, and the address and telephone number to which requests for financial statements should be directed. § 14–2601(f). The financial statement must contain the name, address, and telephone number of the

---

1. It is now axiomatic that the First Amendment rights to freedom of speech and assembly are incorporated in the Due Process Clause of the Fourteenth Amendment and, thus, applicable to the states. *See* Laurence Tribe, American Constitutional Law § 11–2 (1988). Thus, any reference in this opinion to the First Amendment should be understood to mean First Amendment rights applicable to the states through the Fourteenth Amendment.

organization on whose behalf the solicitation is being made. § 14–2603(d)(1). It must also state the amount of gross revenue that the organization receives from contributions and the percentage of gross revenue used by the organization for its "management and general expenses, fund-raising expenses, and program service expenses during the preceding fiscal year." § 14–2603(d)(2)(i). These percentages may be estimated for newly formed organizations. § 14–2603(d)(2)(ii).

In 1993, the statute was amended to exclude solicitations by or on behalf of "charitable organizations," as defined in Maryland's Business Regulation Article § 6–101, that are either exempt from federal income taxation or "a fraternal organization of fire fighters, rescue or ambulance personnel, or police or other law enforcement organization soliciting for charitable purposes." *See* Md.Com. Law II Code Ann. § 14–2601(c)(2)(iv). A charitable organization is defined by § 6–101 of the State's Business Regulation Code as a person or organization that holds itself out to be a "benevolent, educational, eleemosynary, humane, patriotic, philanthropic, or religious organization" that solicits or receives contributions from the public. § 6–101(d)(1)(i). Fraternal, rescue, fire fighting, ambulance or law enforcement organizations are expressly included as charitable organizations under this portion of the Code when they are soliciting for "charitable purposes." § 6–101(d)(1)(ii).

The plaintiffs in this case, Reverend Robert Lucas and Craig Ransom, are Maryland residents who claim that the statute unconstitutionally infringes on their First Amendment right to receive information and solicitations in their homes. They claim that the statute is substantially overbroad, arguing that it includes within its reach sufficient constitutionally protected speech to render it invalid on its face. Compl. ¶ 46. In the alternative, the plaintiffs claim that even if the statute is not invalid on its face, it is unconstitutional as applied to them. The plaintiffs next claim that the statute constitutes an unconstitutional prior restraint of their freedom of speech as guaranteed by the First Amendment. Compl. ¶ 40. Finally, the plaintiffs argue that the exclusion of charitable organizations from the require-

ments of the statute violates the Equal Protection Clause of the Fourteenth Amendment.

The defendant, in addition to challenging the plaintiffs' standing and the ripeness of their claims, argues that the statute is a reasonable regulation promoting the State's substantial interest in protecting its citizens from fraudulent solicitations. The State contends that the statute is narrowly tailored to serve that purpose and, thus, does not violate the plaintiffs' First Amendment rights. Finally, the State asserts that because the statute does not "directly and substantially interfere with the plaintiffs' fundamental [First Amendment] rights," the exclusion of charitable organizations from the statute's requirements should be subjected to, and withstands, rational basis review under the Equal Protection Clause.

## II. *SUMMARY JUDGMENT STANDARD*

In a motion for summary judgment, the burden is on the moving party to demonstrate by a properly supported motion that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Because under Rule 56(a) and (b), both plaintiffs and defendants may move for summary judgment, courts are often confronted with cross-motions. In such situations, the court must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *See* 10A Charles A. Wright et al., Federal Practice and Procedure, § 2720 (1983).

The moving party has the initial responsibility of informing the court of the basis for the belief that summary judgment is warranted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party does not bear the ultimate burden of persuasion, it must show that there is an absence of evidence to support the non-moving party's claim. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. Once a motion for summary judgment is made and

supported, the non-moving party "may not rest upon the mere allegations or denials of [that] party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must show that there is sufficient evidence from which a reasonable factfinder could find in its favor. *Id.* at 322–23, 106 S.Ct. at 2552–53. This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion." *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. In determining the sufficiency of the nonmoving party's evidence, all inferences to be drawn from underlying facts should be resolved in the favor of the nonmoving party, *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, but only such evidence as would be admissible at trial can be considered. *See Wilson v. Clancy,* 747 F.Supp. 1154, 1158 (D.Md.1990), *aff'd,* 940 F.2d 654 (4th Cir. 1991).

## III. *LEGAL ANALYSIS*

Although the plaintiffs and the defendant have both moved for summary judgment on the merits, the defendant has also argued that the case is not justiciable because the plaintiffs lack standing and the case is not yet ripe for resolution. This opinion will address the defendant's justiciability arguments before analyzing the arguments of both parties on the merits.

### A. Justiciability.

Justiciability is the term of art employed to give expression to the limitations that Article III's case-or-controversy requirement places upon federal courts. *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The case-or-controversy requirement limits the business of federal courts "to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* The extent to which a "real" case or controversy exists is determined, in part, under the doctrine of "standing," which examines the sufficiency of the stake of the person making the claim in the outcome of the litigation. *See* Laurence H. Tribe, American Constitutional Law § 3–7. (1988). In addition, the doctrine of "ripeness" examines the substantiality of the controversy by requiring that "the factual claims underlying the litigation be concretely presented, and not based on speculative future contingencies . . . ." *Id.*

### 1. *Standing.*

■ The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* — U.S. —, —, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The Constitution requires, at a minimum, that plaintiffs satisfy three elements. First, the plaintiffs must have suffered a concrete and particularized "injury in fact" that is actual or imminent, not merely "conjectural" or "hypothetical." *Lujan,* — U.S. at —, 112 S.Ct. at 2136 (citations omitted). Second, the plaintiffs must establish that there is a causal connection between that injury and the conduct complained of, or, in other words, the plaintiffs' injury must be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* (citations omitted). Third, the plaintiffs must demonstrate that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Id.* (citations omitted).

■ In addition to the requirements for standing imposed by the Constitution, there are judicially imposed limitations on standing based upon prudential considerations that are part of judicial self-government. *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984). Generally, courts require that plaintiffs assert their *own* legal rights and interests and do not permit

plaintiffs to rest their claim to relief on the rights or interests of third parties. *Id.* (citations omitted). A limitation that generally prohibits third-party standing "frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy." *United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960). In addition, the limitation assures the issues presented to the court will be concrete and sharply presented. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ In First Amendment cases, the Court has recognized that there are competing considerations, such as the deterrent effect that a statute might have on persons whose speech is in fact protected but who refrain from this protected activity because of fear of punishment, that outweigh the prudential rationale against third-party standing:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity. Society as a whole would then be the loser. Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged. *Munson,* 467 U.S. at 956, 104 S.Ct. at 2847.

Because of these competing considerations, the Supreme Court has allowed, in First Amendment cases, plaintiffs whose own activities are unprotected to assert the rights of another in order to protect society's First Amendment interests. *Munson,* 467 U.S. at 956–59, 104 S.Ct. at 2846–48.

■ Plaintiffs asserting third-party standing, however, must still satisfy the case-or-controversy requirements for standing imposed by the Constitution. *See, e.g., id.* at 956, 104 S.Ct. at 2846 ("[T]he Court considers whether the third party has sufficient injury-in-fact to satisfy the Art. III case-or-controversy requirement...."). At the summary judgment stage of the litigation, the party invoking federal jurisdiction must "set forth" by affidavit or other evidence, "specific facts" as opposed to "mere allegations," that the constitutional elements of standing—injury-in-fact, causal connection, and redressability—are satisfied. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2137 (*quoting* Fed.R.Civ.P. 56(e)). It is often "substantially more difficult" for a plaintiff that is not himself the object of the challenged government action or inaction to satisfy these requirements because, "the existence of one or more essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the court cannot presume to either control or predict.'" *Id.* (quoting *ASARCO Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 2044, 104 L.Ed.2d 696 (1989) (opinion of Kennedy, J.)).

■ In this case, the Court finds that both plaintiffs lack standing to challenge Maryland's Door-to-Door Solicitation Act because they have not produced sufficient evidence, under the appropriate summary judgment standard, to support a claim of injury in fact. In order to satisfy the injury-in-fact requirement, the plaintiffs must show more than injury to a cognizable interest. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2137. To a certain extent, every member of the general public suffers injury whenever the First Amendment is violated in a manner that tends to chill the "uninhibited marketplace of ideas" that the Amendment protects. *Frissell v. Rizzo,* 597 F.2d 840, 846 (3d Cir.1979), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Article III requires more, however. The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan,* —— U.S. at ——, 112 S.Ct. at 2143. The plaintiffs must, therefore, demonstrate that the defendant's conduct directly injures them aside from an injury to their general,

or even specific, interest in a particular area of governmental conduct. *See Sierra Club v. Morton,* 405 U.S. 727, 739–41, 92 S.Ct. 1361, 1368–69, 31 L.Ed.2d 636 (1972).

■ Aside from his general conclusions concerning the effects that the Act is having on door-to-door solicitors, plaintiff Lucas has not demonstrated that he has been injured in any way by the Act. In fact, he has admitted that he has not suffered any injuries as a result of the Act and that he has no personal knowledge of any organization that has suffered injuries as a result of the Act. Dep. of Robert Lucas (hereinafter "Lucas Dep.") at 64–66. He has not been solicited at his door by any educational, political, or charitable organizations since 1984. *Id.* at 8, 11. He has never been prevented from making a financial contribution or donation to any organization of his choice, *id.* at 37–38, nor has he been deprived of any opportunity to receive information and publications from organizations of his choice. *Id.* at 44, 56–57, 77. Thus, his claim of injury is, essentially, that unknown organizations, ones from whom he apparently does not desire to receive information, are prevented by the Act from soliciting door-to-door in Maryland. This is nothing more than a general claim of harm to his and every citizen's interest in the proper application of the Constitution and laws, and is clearly insufficient to satisfy the injury-in-fact constitutional requirement for standing. *See Lujan,* —— U.S. at ——, 112 S.Ct. at 2143.

■ Plaintiff Ransom asserts that he has observed a drop off of door-to-door solicitations at his home since the enactment of the statute in 1992. Dep. of Craig Ransom (hereinafter "Ransom Dep.") at 22. Ransom's claim that "organizations that used to come by, who were interesting people to talk to from time to time, now no longer come by," is simply insufficient, as a matter of law, to satisfy the injury-in-fact constitutional requirement for standing. Ransom has not demonstrated that any of the groups that formerly solicited him at his home—various LaRouche Organizations, religious groups such as the Jehovah's Witnesses and Mormons, and local volunteer fire and ambulance companies—have ceased doing so because of the Act. Ransom concedes that the civic groups such as the Eastport Volunteer Fire Department and Volunteer Ambulance Department now solicit by mail and that he has continued to donate small amounts of money to those organizations from time to time. Ransom Dep. at 8–9, 20–21. He states that because of his past support for the LaRouche organization, solicitations for those groups now occur over the phone. *Id.* at 10–16. Finally, he has not demonstrated that religious organizations have ceased coming to his door because of the Act, and, in fact, religious organizations are expressly exempted from the Act's requirements. *See* Md. Com.Law II Code Ann. § 14–2601(c)(2)(iv) (1993). Thus, like Lucas, Ransom has not identified any specific organization that he wishes to receive information from, or donate money to, but is prevented from doing so by the Act. Ransom Dep. at 8–9, 21–22. Like Lucas, his claim of injury is merely that unknown organizations are being inhibited by the Act from soliciting door-to-door in Maryland.

The plaintiffs claim that they have satisfied the injury-in-fact requirement because the Supreme Court has recognized that hearers, under certain circumstances, have standing to object to restrictions placed on persons whom they wish to hear. *See, e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756–57, 96 S.Ct. 1817, 1822–23, 48 L.Ed.2d 346 (1976); *Kleindienst v. Mandel,* 408 U.S. 753, 762–65, 92 S.Ct. 2576, 2581–83, 33 L.Ed.2d 683 (1972); *Lamont v. Postmaster General of U.S.,* 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). Those decisions did not, however, eliminate the injury-in-fact requirement. As pointed out by several lower court decisions, the claims of the plaintiffs in those cases rested upon the fact that the challenged conduct injured an interest in a defined relationship with a *specific* speaker or speakers. *See Basiardanes v. City of Galveston,* 682 F.2d 1203, 1211–12 (5th Cir.1982); *Frissell v. Rizzo,* 597 F.2d 840, 847 (3rd Cir.1979), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Streich v. Pennsylvania Comm'n. on Charitable Org.,* 523 F.Supp. 1377, 1382 (M.D.Penn.1981).

The requirement that there exists a definite relationship with a specific speaker or speakers in order for a hearer or listener to have standing is essential "to avoid the kind of broad scale assertion of injury to an undifferentiated public interest," that is prohibited by the Constitution. *Frissell,* 597 F.2d at 847. As stated above, neither plaintiff in this case has identified a specific organization or speaker whose activities the Act is inhibiting. Arguments identical to those made by the plaintiffs in this case were made and rejected in *Streich,* and this Court, like the court in that decision, finds that the plaintiffs are asserting no more than an injury to "an abstract interest in the legality of government conduct." *See Streich,* 523 F.Supp. at 1382.

### 2. Ripeness.

■ The defendant also challenges the justiciability of this case, claiming that it is not yet ripe for consideration. Although the Court finds that plaintiffs lack standing to challenge the Act, because the Court, in the alternative, will address their arguments on the merits, the Court will first address the defendant's ripeness argument. "Justiciability concerns not only the standing of the litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). A case is "ripe" for consideration only when it tenders the underlying constitutional issues in "clean-cut and concrete form." *Renne,* 501 U.S. at 322, 111 S.Ct. at 2339 (quoting *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 584, 67 S.Ct. 1409, 1427, 91 L.Ed. 1666 (1947)); *see Socialist Labor Party v. Gilligan,* 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972); *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1234 (4th Cir.1989), *cert. denied,* 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 286 (1990).

■ The Court believes that the ripeness issue in this case is a close call in that, arguably, "we know very little more about the operation of the [Door-to-Door Solicitation Act] as a result of this lawsuit than we would if a prospective plaintiff who had never set foot in [Maryland] had simply picked this section of the [Maryland] laws out of the statute books and filed a complaint in the District Court...." *See Gilligan* 406 U.S. at 588, 92 S.Ct. at 1719. After considering the clear, comprehensive, and mandatory disclosure requirements that the statute imposes on all non-exempt door-to-door solicitations in this state in excess of two hundred dollars, the clarity and guidance of the numerous court opinions in this area of First Amendment law (including three thoroughly explained Supreme Court opinions), and the extensive briefing by both parties in this case, the Court is convinced that this case tenders the underlying constitutional issues in "clean-cut and concrete form." *Renne,* 501 U.S. at 322, 111 S.Ct. at 2339.

In support of his argument that this case is not a ripe controversy, the defendant cites the Fourth Circuit's opinion in *Telco,* in which the Court found that a challenge to the enforcement provisions of Virginia's charitable solicitations law lacked ripeness because very little was known about the operation of that portion of the statute, including the scope of the grounds for suspension or revocation of a solicitor's registration and the maximum length of period of revocation. *See Telco,* 885 F.2d at 1234–35. The district court and state court had taken divergent views on the statute's meaning. *Id.* at 1235. Because those divergent interpretations bore on the statute's constitutionality, and because the effect of the enforcement provisions on solicitors was not given with any particularity, the Court held that the challenge to the statute had "all the earmarks of unripeness." *Id.* By contrast, the effect of the Maryland's Door-to-Door Solicitation Act is clear; if a solicitor intends to solicit donations in excess of two hundred dollars, door-to-door, he must comply with the statute's extensive and detailed disclosure requirements. The statute regulates the manner in which a solicitor must present his message. The Court in *Telco* did not question the ripeness of the challenges to similar statutory disclosure requirements in that case because, this Court assumes, the effect of those requirements on the solicitors was manifest. *See id.* at 1231–34 (addressing the statute's financial disclo-

sure and mandatory script submission provisions with no discussion of ripeness).

In short, it is difficult to imagine how the effect of this statute's mandatory, unambiguous, detailed, and extensive disclosure requirements could be more clean-cut or in more concrete form than it has been presented in this case. Although this Court finds that the plaintiffs have not demonstrated sufficient injury to their interests to satisfy constitutional standing requirements, it is patent that if this Court assumes that they do have standing, the effect of the statute on solicitors is clear, and thus, ripe for decision.

## B. The Merits.

■ It is now well-settled that charitable solicitations are "speech," entitled to the full protection of the First Amendment. *See Riley v. National Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Secretary of State of Maryland v. Joseph H. Munson, Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Schaumburg v. Citizens for Better Env't,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). This question was first directly addressed by the Supreme Court in *Schaumburg,* which held that "[p]rior authorities ... clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." 444 U.S. at 632, 100 S.Ct. at 833. Because solicitations are protected speech, laws regulating that form of speech are subjected to "standard First Amendment analysis." *Riley,* 487 U.S. at 788, 108 S.Ct. at 2673.

The plaintiffs challenge the Maryland Door-to-Door Solicitation Act on three grounds. First, they claim that the Act is an unconstitutional prior restraint. They next argue that the Act is unconstitutionally overbroad. Finally, they challenge the constitutionality of the exemptions of certain organizations from the requirements of the Act.

## 1. Prior Restraint.

■ "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *see Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Presumably in order to obtain the benefit of this "heavy presumption," the plaintiffs have argued that the Door-to-Door Solicitation Act constitutes a prior restraint. *See* Pls.' Mem. Supp. Mot. for Summ. J. (hereinafter "Pls.' Supp. Mem.") at 16–19. Any legislation that inhibits the solicitation of funds, the plaintiffs argue, is an "effective prior restraint on freedom of speech." *Id.* at 17. As this Court understands it, under the plaintiffs' theory of prior restraints, any government conduct that in any way inhibits or chills free speech is a "prior restraint" because the chilling effect of the conduct prevents or "restrains" some speech before or "prior" to when it would be made absent such a chilling effect. Thus, under that rather literal interpretation of the doctrine, all time, place, and manner restrictions are prior restraints, *O'Brien* regulations of conduct implicating expression are prior restraints, and all overbroad statutes are prior restraints, bearing a heavy presumption against their validity because they have a chilling effect on some speech.

This argument, though creative, completely ignores the reasons why prior restraints are particularly disfavored by the courts. As the defendant correctly points out, the term "prior restraint" is "used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* —— U.S. ——, ——, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993) (emphasis in original). Prior restraints are particularly disfavored and bear a heavy presumption against validity because "a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand." *Southeastern Pro-*

*motions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975).

The plaintiffs cite the Supreme Court charitable solicitation cases and *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), to support their argument, but those decisions demonstrate the very distinction between prior restraints and other legislation affecting free speech that the plaintiffs' argument ignores. In *Village of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), for example, the legislation at issue was a prior restraint, not because of the unconstitutional burden that it placed on the exercise of protected speech, but because *before* a solicitor could speak at all, he had to obtain a permit. *Schaumburg,* 444 U.S. at 623, 100 S.Ct. at 829. Likewise, in *Near v. Minnesota,* it was the court order forbidding the defendant newspaper from publishing articles "containing malicious, scandalous and defamatory matter" that was the prior restraint, not the unconstitutional statute prohibiting such statements. 283 U.S. at 704–705, 51 S.Ct. at 627.

Of course, the Door-to-Door Solicitation Act does define solicitations that do not comply with its requirements as "unfair and deceptive trade practices." Trade practices that are deceptive or unfair are covered by the Maryland Unfair and Deceptive Trade Practices Act, which provides for injunctions against future violations. *See* Md.Com. Law II Code Ann. §§ 14–2602(b), 13–406 (1993). The issuance of such an injunction, which would clearly be a "prior restraint" as that doctrine has been articulated, is not being challenged in the lawsuit, however. This Court finds that the Maryland Door-to-Door Solicitation Act is not a "prior restraint." The Court will not, therefore, subject the statute to a heavy presumption against validity. Rather, the Court will examine the statute with the standard First Amendment analysis for fully protected speech.

## 2. *Overbreadth.*

■ The plaintiffs next attack the statute claiming that it is unconstitutionally overbroad. An overbreadth challenge to a statute can be established in one of two ways. To prevail on a claim of overbreadth, a plaintiff must establish either that the challenged law could *never* be applied in a constitutional manner or that even though it might be validly applied to the plaintiffs or others, it is nevertheless so "substantially overbroad" that there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting *City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984)). The plaintiffs claim that the Door-to-Door Solicitations Act could never be applied in a constitutional manner because "there is no possible set of circumstances under which it could operate within acceptable parameters of First Amendment principles...." Pls.' Supp. Mem. at 16.

■ Like all protected speech, charitable solicitations "undoubtedly" can be "subject to reasonable regulation." *Schaumburg,* 444 U.S. at 632, 100 S.Ct. at 833–34. Such regulations should, however, be undertaken with due regard to the fact that "solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Id.* The parties are unable to agree on the appropriate standard, or applicable First Amendment test, that this Court should utilize in its review of the requirements imposed by the Door-to-Door Solicitations Act.[2] In this circuit, how-

---

**2.** In fact, the plaintiffs, themselves, are apparently having a difficult time deciding which standard of review is appropriate. On the one hand, they have argued that the appropriate test is the test established in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), which requires that a regulation of conduct that impacts speech (1) be within the constitutional power of government to regulate; (2) furthers an "important or substantial" governmental interest; (3) is unrelated to the suppression of free expression; and (4) restricts free speech no more that is essential to further that asserted governmental interest. *See* Pls.' Supp. Mem. at 14–15

ever, that standard has been clearly articulated. In order for a statute regulating solicitations to be upheld, the State has the burden of demonstrating that "its regulation is narrowly tailored to further a strong, subordinating interest that the state is entitled to protect." *Famine Relief Fund v. West Virginia,* 905 F.2d 747, 751 (4th Cir.1990); *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1230 (4th Cir.1989), *cert. denied,* 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 286 (1990).

■ The defendant has asserted as the substantial governmental interest furthered by the Act the State's interest in preventing fraud or overreaching. *See* Mem. Supp. Def.'s Mot. for Summ. J. (hereinafter "Def.'s Supp. Mem.") at 29. These interests are indeed sufficiently "substantial" to justify narrowly tailored government regulations. *Schaumburg,* 444 U.S. at 637–38, 100 S.Ct. at 836–37. Because the Court finds that every requirement of the State's Door-to-Door Solicitations Act has been previously upheld in either Fourth Circuit or Supreme Court decisions interpreting similar provisions in similar statutes of other states, the Court finds that the Act is not overbroad.

Under the Act, a "Pledge Form" must contain the name of the solicitor and the name of the charity for which a contribution is being solicited. Md.Com. Law II Code Ann. § 14–2603(c)(1)–(2) (1993). The Supreme Court, in *Riley,* expressly stated that a state may require a solicitor to disclose unambiguously his or her employer's name and his or her professional status. 487 U.S. at 799 n. 11, 108 S.Ct. at 2679 n. 11. The Pledge Form must contain the general purposes for which the contribution will be used.

§ 14–2603(c)(3). The Fourth Circuit has previously held that "[a] state can require charities soliciting funds within its borders to accurately describe their mission and how the donations will be used." *Famine Relief,* 905 F.2d at 752.

The Pledge Form must contain a "Disclosure Statement" that states where a current financial statement of the organization for which the contribution is being sought is available and the address and telephone number where request for a financial statement can be made. § 14–2601(f)(1)–(2). In *Telco,* the Fourth Circuit reviewed a similar provision of the Virginia charitable solicitations law and held that "[r]equiring such a statement is a permissible exercise of state authority." 885 F.2d at 1232. The Court expressly distinguished this type of disclosure requirement and the requirement struck down by the Supreme Court in *Riley,* based on the fact that a "brief, bland, and nonpejorative disclosure ... is unlikely to discourage donations." *Id.* Finally, the Financial Statement must state the name and address of the organization for which the contribution is being sought (upheld in *Riley* ) and the percentage of gross revenues used for management, fund raising, and service expenses. § 14–2603(d)(1)–(2). A similar, and, in fact, slightly more burdensome, requirement was upheld by the Fourth Circuit in *Famine Relief.* 905 F.2d at 752 n. 6.

In short, every provision of the Act that might arguably be said to infringe upon First Amendment rights has been previously upheld by either the Fourth Circuit or the Supreme Court as "narrowly tailored to further a strong, subordinating interest that the

(citing *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679). As recognized by the Supreme Court, this test, "in the last analysis is little, if any, different from the standard applied to time, place, or manner restrictions." *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 298, 104 S.Ct. 3065, 3071, 82 L.Ed.2d 221 (1984). Time, place and manner restrictions are constitutional so long as they "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d

661 (1989). In contrast to these relatively less burdensome First Amendment standards, the plaintiffs have, on the other hand, argued that because the Act contains mandatory disclosure requirements, it is a content-based regulation that must be subjected to "exacting First Amendment scrutiny." Pls.' Opp'n Mem. at 14–15 (citing *Riley v. National Fed'n of the Blind,* 487 U.S. 781, 798, 108 S.Ct. 2667, 2678, 101 L.Ed.2d 669 (1988)). This standard requires that the statute is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *See Burson v. Freeman,* —— U.S. ——, ——, 112 S.Ct. 1846, 1850, 119 L.Ed.2d 5 (1992).

state is entitled to protect." *Telco,* 885 F.2d at 1230. Based upon these authorities, it simply cannot be said that "there is no possible set of circumstances under which [the Act] could operate within acceptable parameters of First Amendment principles...." *See* Pls.' Supp. Mem. at 16. In fact, it would be in only a very rare set of circumstances that the Act's requirements might, as applied to a specific plaintiff, unconstitutionally infringe upon that plaintiff's First Amendment rights. That rare set of circumstances is not, of course, presented in this litigation.

### 3. Equal Protection.

The plaintiffs' final challenge to the Door-to-Door Solicitation Act attacks the 1993 amendment to the statute that excludes solicitations by or on behalf of some "charitable organizations." *See* Md.Com. Law II Code Ann. § 14–2601(c)(2)(iv).[3] A charitable organization is defined by § 6–101 of the State's Business Regulation Code. That definition includes any person or organization that holds itself out to be a "benevolent, educational, eleemosynary, humane, patriotic, philanthropic, or religious organization" that solicits or receives charitable contributions from the public, § 6–101(d)(1)(i), as well as fraternal, rescue, fire fighting, ambulance or law enforcement organizations that are soliciting for "charitable purposes." § 6–101(d)(1)(ii). In order to be exempt from the requirements of the Door-to-Door Solicitations Act, a charitable organization must be either exempt from federal income taxation or "a fraternal organization of fire fighters, rescue or ambulance personnel, or police or other law enforcement organization soliciting for charitable purposes." Md.Com. Law II Code Ann. § 14–2601(c)(2)(iv).

The plaintiffs argue that because the Act places greater burdens on the exercise of protected First Amendment rights by those who must comply with its requirements, based upon the content of their speech, than it does on those who are exempted, this differential treatment should be subjected to "strict scrutiny," and invalidated because the

exemptions are not tailored to serve a compelling state interest. Pls.' Supp. Mem. at 20. The defendant responds that because the Act only infringes upon the First Amendment rights of those subjected to it in a "minor" way, it should only be subjected to "rational basis" scrutiny and upheld because the exemptions are rationally related to the government interests that the Act promotes. Def.'s Supp. Mem. at 33–35. Although the Court agrees with the plaintiffs that the exemptions contained in the Act must be subjected to heightened scrutiny, the Court finds that the justifications supporting the exemptions satisfy even that level of scrutiny.

It is now well-settled that if a statute discriminates between persons exercising their First Amendment rights (placing greater or lesser burdens on the exercise of those rights by some, but not others), based upon the content of their speech, the Equal Protection Clause requires that it be "finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980); *see also California Medical Ass'n v. Federal Election Comm'n,* 453 U.S. 182, 200, 101 S.Ct. 2712, 2724, 69 L.Ed.2d 567 (1981); *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 98–99, 92 S.Ct. 2286, 2291–92, 33 L.Ed.2d 212 (1972); *Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968). Clearly, the requirements of the Act burden protected First Amendment rights substantially, although not unconstitutionally. As previously discussed, the State's interest in preventing fraud or overreaching is indeed substantial. *Schaumburg,* 444 U.S. at 637–38, 100 S.Ct. at 836–37. It also cannot be disputed that the exemptions from the requirements imposed by the Act are content-based exemptions, because only solicitations for contributions for *charitable* purposes are excluded. *See* Md.Com. Law II Code Ann. § 14–2601(c)(2)(iv); Md.Bus.Reg.Code Ann. § 6–101 (1993); *cf. Mosley,* 408 U.S. at 98, 92 S.Ct. at 2291 (picketing not permitted near

---

3. The plaintiffs have not challenged the other exemptions from the requirements of the Act, such as solicitations already regulated by the Telephone Solicitation Act, or solicitations made

by persons or groups that are already heavily regulated (insurance agents or stock brokers, for example). § 14–2601(c)(2)(i)–(iii).

schools except peaceful picketing arising out of *labor* disputes). Thus, the only question remaining is whether the exemption is finely tailored such that the State's interests are promoted or furthered. The Court finds that it is.

■ First, it must be emphasized that the fact that certain charitable organizations were excluded from the requirements of the Door-to-Door Solicitation Act does not mean that the solicitation activities of those organizations are not regulated by the State. In fact, "charitable organizations" are subjected to even more burdensome reporting and disclosure requirements, under title six of the State's Business Regulations Code (Charitable Organizations and Charitable Representatives), than other organizations that are regulated only by the statute being challenged in this case. *See* Md.Bus.Reg.Code Ann. § 6–101 *et seq.* (1993). Thus, the State is simply not discriminating between the First Amendment rights of the organizations regulated by the Door-to-Door Solicitations Act and those regulated by the Charitable Organizations law. *Cf. California Medical Ass'n v. Federal Election Comm'n*, 453 U.S. 182, 200, 101 S.Ct. 2712, 2724, 69 L.Ed.2d 567 (1981) (No discrimination between corporations and unincorporated associations where each is regulated by different portions of political contribution law). It is really only those organizations that are exempted from *both* the Door-to-Door Solicitations Act *and* the laws regulating the solicitation activities of "charitable organizations" whose solicitation activities are not regulated by the State.

The law regulating charitable organizations contains four relatively narrow exemptions from its requirements. That statute's requirements do not apply to any charitable organization that does not employ a professional fundraiser and (1) solicits charitable contributions for a named individual and the entire amount collected is delivered to that individual; (2) is exempt from federal income tax and is a religious organization; (3) solicits contributions only from its members; or (4) does not receive more than $25,000 in charitable contributions from the public in a year and all of its fundraising is done by volunteers with none of that money inuring to the benefit of, or being paid to, an officer or member of the organization. § 6–102(c). It is clear to the Court that these narrow exemptions are a practical and legitimate recognition of the fact that the risk of fraud or overreaching by those organizations is minimal and that it would be extremely costly and difficult for the State to attempt to regulate those organizations because they operate on such a small scale. In addition, the exemption for tax-exempt religious organizations recognizes that the risk of State entanglement in the free exercise of religion simply outweighed the need to regulate organizations in which the chance of fraud is kept to a minimum by the federal tax laws. In this case, the differential treatment of these organizations is clearly justified, *see California Medical Ass'n*, 453 U.S. at 200, 101 S.Ct. at 2724, and does not violate the Equal Protection Clause.

## IV. CONCLUSION

The Court is persuaded that the plaintiffs in this case have not, under the appropriate summary judgment standard, demonstrated any injury in fact sufficient to satisfy the standing requirements of Article III. Even if the Court assumes that the plaintiffs have demonstrated that they have been sufficiently injured to establish their standing, the Act is simply not a prior restraint, is not unconstitutionally overbroad, and does not violate the Equal Protection Clause of the Constitution. For these reasons, the plaintiffs' motion for summary judgment is *denied*, and the defendant's motion for summary judgment is *granted*. A separate Order so providing will be entered.

## ORDER & JUDGEMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 28th day of June, 1994, by the Court, ORDERED and ADJUDGED:

1. That the defendant's motion for summary judgment BE, and it hereby, IS, GRANTED;

2. That the plaintiffs' motion for summary judgment BE, and it hereby IS, DENIED;

3. That judgment is GRANTED in favor of the defendant, and against the plaintiffs, with costs awarded to the defendant;

4. That this case BE, and it hereby IS, CLOSED; and

5. That the Clerk of Court mail copies of the foregoing Memorandum Opinion and of this Order to counsel for the parties.